MOSS POINT LUMBER COMPANY ET AL. *v.* VIRGINIA M. THOMPSON, ADMINISTRATRIX.

CONTRACTS. *Construction. Logs and logging. "Raftage" and "boomage."*

A contract by which defendant was to pay complainant all the proceeds of logs delivered by a third person to him, after deducting advances made thereon by defendant, entitled him upon an accounting with complainant to credit for sums paid for "raftage" and "boomage," charges incident and necessary to the delivery of the logs, and which had to be paid before possession could be obtained by defendant.

FROM the chancery court of Jackson county.

HON. STONE DEAVOURS, Chancellor.

Nathaniel Q. Thompson, appellee's intestate, was the original complainant in the court below; upon his death, pending the suit, the cause was renewed in the name of appellee, Mrs. Thompson, the administrix of his estate; the Moss Point Lumber Company and another, appellants, were defendants there. From a decree in complainant's favor the defendants appealed to the supreme court.

In March, 1899, David M. Powell, one of the appellants, made a contract to sell and deliver to appellant "at the usual place of delivery at Moss Point," 2,500 pine logs at stated prices, and afterwards he entered into other contracts to deliver 5,000 logs at stated prices. The Moss Point Lumber Company agreed

to advance to Powell seventy-five cents per log, through N. Q. Thompson, on all logs in the water, and "provisions or money to be used in manufacturing said saw logs and rafting them to market;" "the final settlement of accounts to be made when the saw logs reached the market"; and Thompson advanced Powell considerable amounts while he was engaged in the cutting and hauling the logs. On December 23, 1899, Thompson wrote to the Moss Point Lumber Co.: "Yours to hand. * * * Will ask now how you understand the contracts of Mr. Powell with you. The way I took it I would be entitled to draw anything the logs brought over sixty cents on the first three contracts, and all over seventy-five cents on the last contract. Let me know if this is the way you understand it. I am paying cash almost daily for logs, and I must know where the money I furnish over the sixty and seventy-five cents is coming from. If you will agree to turn it over to me as fast as the logs come in, that is the balance over sixty and seventy-five cents which you have paid to me, I can arrange to run it. * * *" On January 1, 1900, the Moss Point Lumber Company answered this letter as follows: "Replying to yours of the 23d. We are willing to settle with you for the Powell logs as requested, and as we understand it, that is: First contract we made with Mr. Powell was for 2,500 logs, with an advance of sixty cents per log on all logs in the water, later we made an additional advance of fifteen cents per log on all logs. Logs put in under the first contract were branded B. P. Now when sufficient number of this brand comes in to pay the seventy-five cents per log we have advanced on them, then all in excess of that amount we will pay to you, and so on with other contracts. * * * Soon as we finish measuring, will send statement. Tell Mr. Powell to let us know to whom to pay raftage, and how much." Powell owed Thompson considerable money, and Thompson filed the bill in this case in the chancery court of Jackson county against Powell and the Moss Point Lumber Company, seeking to recover the proceeds of the

logs less the seventy-five cents per log already advanced, and asked that an accounting be had to show what that was. Both defendants answered the bill, and evidence was taken. It was shown that the Moss Point Lumber Company paid, in addition to the seventy-five cents advanced on each log delivered, about $838 expenses of rafting and boomage. On the hearing the chancellor ordered an account to be stated, and appointed a commissioner to state the account, and directed him to find the total number of logs delivered by Powell under the contracts, and to find the gross sum paid for the logs, and from that sum to deduct all sums already advanced to complainants, and report the difference as the amount due by the Moss Point Lumber Company to complainant; thus denying the charges for rafting and boomage to said defendant, which it had paid. The commissioner so stated the account, and a final decree for complainant including these sums was rendered by the court below.

*Ford & White,* for appellants.

The question presented by this appeal depends for its solution upon the proper construction of a single clause in a letter written by appellant to N. Q. Thompson, the original complainant in the court below, and which letter constituted the contract, or agreement between the parties.

The letter out of which the controversy arose says they, the lumber company, had a contract, first with Powell, for 2,500 logs, that the company was to pay an advance of sixty cents per log on all logs in the water, later on they made an additional advance of fifteen cents per log on all logs. Now, when sufficient number of this brand comes in to pay seventy-five cents per log we have advanced on them, then all in excess of that amount we will pay to you, and so on with the other contracts, etc.

The appellant's contention is that the chancellor erred in construing the letter to mean that the lumber company should remit Thompson the gross amount that the logs should bring

under the contracts, and thereby prevent them from retaining $839.05 which they paid out for boomage and raftage on the logs, some of it prior to the writing of this letter and some subsequent. It was not contended that the lumber company did anything that estopped or precluded them from insisting upon this claim for boomage and raftage, but that an agreement to remit all the proceeds meant each and every dollar that they should bring. Both parties concede Powell's insolvency and inability to pay.

The undisputed testimony is that raftage consists of taking the logs from the landings, where they are hauled and driving and running them to Moss Point, and boomage is for storing the logs at the Dog river boom, and putting them into what is called the bull pens, and sorting them out, in order to deliver them to the mills.

Thompson, the original complainant, testified that he did not pay any boomage for Powell, although he did pay some raftage, that a log was not considered as delivered until it reached the mouth of the river and was taken up by the inspectors. In fact there was no controversy that this raftage and boomage paid out was an absolutely necessary expense, and that the money was actually paid for that purpose, and the case is, therefore, not within the rule of the chancellor passing upon disputed questions of fact, whose decision on such questions will not be disturbed. The decision and decree of the chancellor was based upon the language of the letter of January 1, 1900, in which the appellant agreed to remit Thompson all the logs brought over the seventy-five cents per log advanced; and that there was no exception for expenses provided for. We insist that in every agreement of this kind, where one party to the contract is to receive a product and sell it, and account for the proceeds, that even if it does provide for remitting all the proceeds, that the necessary expenses incidental to transportation, delivery and sale of the product is by implication excepted. 1 Am. & Eng. Enc. Law (2d ed.), 143.

*H. B. Everett,* for appellee.

The contract sued on is evidenced by a letter from appellant to N. Q. Thompson of date, January 1, 1900, in reply to a letter from Thompson of date, December 23, 1899. These two letters show the consideration on which the contract was made, viz: that as both parties were supplying Powell to aid him in getting logs, and both looking to the sale of logs for payment, an understanding between them became necessary and a matter of importance to Thompson. The appellant, at the request of Thompson, undertook and promised to remit to him all proceeds of the logs in excess of seventy-five cents per log, and to that extent guaranteed the account being made by Powell with Thompson. The credit thus established for Powell with Thompson, to say nothing of the advantage to accrue to the promisor in enabling Powell to comply with his contracts, was ample consideration for this promise. The promise clearly contemplated this advantage as well as the inducement it gave to Thompson not only to extend further credit, but to indulge Powell on the account already made. Thompson and Powell resided in the state of Alabama, where the logs, the property of Powell, were gotten out, and by Powell removed to the mills of appellant, in the state of Mississippi, after this letter was received by Thompson. After receiving this letter Thompson not only made further advances to Powell, but permitted him to move the logs to the mills, and into the possession of appellant without taking steps, as he might have done, to secure the payment of his account by a resort to the logs while in his state and vicinity. This credit and this indulgence was clearly in the contemplation of both parties as an inducement and consideration for the promise of appellant by its letter of January 1, 1900.

It is contended that the appellant lumber company is entitled to claim and hold advances made in excess of seventy-five cents per log, and in violation of the contract with Thompson, because Thompson received all the money advanced, and this

excess was paid to Powell direct and to employes and applied to other necessary expense of rafting and boomage to get the logs to market for the mutual benefit and to save mutual loss. The answer to that is that by the terms of these log contracts themselves, it is expressly provided that the advances were to be made through Thompson, and that such advances were to be made to pay these very expenses to the amount of sixty cents a log, and a lien was taken by the appellant on the logs to secure such advances. But this lien and this right to resort to the logs or the purchase money of same was, by the contract with Thompson, expressly waived as to all such advances in excess of seventy-five cents per log. To construe it otherwise would be to destroy all its meaning, and as to Thompson, render it but a "sounding brass and tinkling cymbal." The very question Thompson asked in his letter of December 23, was in substance, shall I depend upon it that, when I advance Powell, in excess of the sixty cents per log you have agreed to advance, I shall receive, to cover such advances made by me, all the excess. The reply was, we have agreed to and will advance seventy-five cents per log when we shall receive logs sufficient to pay that much of our advance account. That was without reserve or qualification and a division of risk.

TRULY, J., delivered the opinion of the court.

The evident intent of all parties to this litigation, as appears not only from the testimony but also from their previous course of dealings, was that Thompson should receive from the appellant all the proceeds of the logs delivered by Powell to the appellant, after deducting advances made thereon. But by the word "proceeds" undoubtedly only the net proceeds after all charges for delivery had been paid was meant. From this record it is undeniable that "raftage" and "boomage" are charges incident and necessary to the delivery of logs, and must be paid by some one before possession of the logs can be obtained by the milling company, "raftage" being the expense of floating

and "running" the logs, and "boomage" being a fixed charge payable at place of delivery. This is not denied by Thompson, is admitted by Powell, and is stated as a fact by the officers of the appellant company. The construction placed by the chancellor upon the letter of January 1, 1900, from appellant to appellee, was too narrow, and not in accordance with what all parties understood the contract to mean. It is true that appellant, by that letter, does state that, when a sufficient number of logs under each contract "come in" to pay the seventy-five cents per log advanced, Thompson is to receive all in excess thereof. But this language must be construed in the light of the previous course of dealing and the existing contract between the parties. Considered from this point of view, we find that the logs were not considered as delivered to appellant—had not "come in," in the language of the letter—until "boomage" and "raftage" had been paid. That this was the real understanding of all parties, and is the true interpretation of the letter, is made more manifest by the fact that Thompson was acquainted from the beginning with the contracts existing between appellant and Powell, handled all moneys advanced under the contracts, and knew that no part of the money advanced to Powell through him was applied to "boomage," and only a portion of it paid out for "raftage," the balance being used to pay for the logs and to get them hauled and put in the water. The very letter upon which Thompson bases his claim showed that money was being paid out by the appellant for raftage over and above the amount advanced in cash to Thompson for Powell. This is not a case in which one party has been misled by the letter or statement of another. It is not contended that this letter was the beginning of the dealings between Thompson and Powell, and it is not proven that it in anywise influenced appellee's intestate in making advances. Inasmuch as "raftage" and "boomage" had to be paid before the logs could be delivered to the appellant, and inasmuch as Powell's contract was to deliver the logs at Moss

Point, the place of business of appellant, it is our opinion that all moneys paid for this purpose were necessarily expended for Powell's benefit and in order that he might fulfill his contract, and should have been credited to appellant, and deducted from the proceeds of the logs in stating the account between the parties litigant. The decree herein denied any credit for the money expended in paying these expenses and charges, and required appellant to account to appellee for the gross proceeds of all the logs.

*For this error the decree of the chancery court is reversed, and the cause remanded for a restating of the account.*